## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————————————

VERONICA J. R.,[1]

      Plaintiff,

v.                                   Case No. 1:23-cv-00732-JCH-LF

MARTIN O'MALLEY,[2] Commissioner
of the Social Security Administration,

      Defendant.

### **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Veronica R.'s Brief in Support of Motion to Remand or Reverse (Doc. 18), which was fully briefed on May 3, 2024. *See* Docs. 28, 29. Senior District Judge Judith C. Herrera referred this case to me "to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 25. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to support his decision regarding Plaintiff's migraines with substantial evidence. I therefore recommend that the Court GRANT Plaintiff's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.      Background and Procedural History

Plaintiff was born in 1982 and lives in Grants, New Mexico, with her family.  AR 41, 268, 270, 1206.[5]  She has a GED (high school equivalency diploma) and has training as a certified nursing assistant ("CNA").  AR 242.  She has worked as a home health aide and a telemarketer.  AR 25.  She filed an application for Disability Insurance Benefits ("DIB") under Title II on February 26, 2019, alleging disability since July 1, 2018, due to manic bipolar I disorder, depression, post-traumatic stress disorder ("PTSD"), anxiety, and insomnia.  AR 71, 73, 77, 84, 95, 97.  She filed an application for supplemental security income ("SSI") benefits under Title XVI on July 26, 2019, alleging the same onset date.  AR 72–73, 96, 116, 218.[6]  The Social Security Administration ("SSA") denied her claim initially and on reconsideration.  AR 135, 145.  Plaintiff requested a hearing before an ALJ.  AR 153.  On April 8, 2021, ALJ Jeffrey Holappa held a hearing.  AR 33.  He issued his unfavorable decision on May 6, 2021.  AR 12.

ALJ Holappa found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020.  AR 18.  At step one, he found that Plaintiff had not engaged in substantial, gainful activity since July 1, 2018, her alleged onset date.  *Id*.  At step two, he found that Plaintiff's migraine headaches, cervical strain/cervicalgia/scoliosis, carpal tunnel syndrome status-post bilateral median nerve decompressions, anxiety disorder, bipolar disorder, and PTSD were severe impairments.  *Id*.  At step three, he found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  AR 19.  Because he

---

[5] Documents 11-3 through 11-22 constitute the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[6] Contradictory application dates appear in the record.  *Compare* AR 72–73, 96, 116, 215 (filing date listed as July 26, 2019) *with* AR 218 (application completion date listed as July 29, 2019).  These discrepancies do not affect my analysis.

found that none of the impairments met a Listing, he assessed Plaintiff's RFC.  AR 21.  He found

Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can, [sic] lift/carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk up to 6 hours in an 8-hour day, push/pull as much as she can lift/carry; she is limited to occasional climbing of ramps and stairs; never climbing ladders or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling.  The claimant is also limited to frequent bilateral handling, fingering, and feeling.  The claimant is further limited to a moderate noise environment, no more than occasional exposure to dust, odors, fumes, or other pulmonary irritants.  She can have no exposure to unprotected heights or moving mechanical parts.  Finally, claimant is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks; making simple work-related decisions; dealing with changes in a routine work setting; maintaining concentration, persistence, and pace for at least two hour intervals; and occasional interactions with supervisors and co-workers, but less than occasional (but more than none) with the general public.

*Id.*

At step four, he concluded that Plaintiff was not capable of performing her past relevant

work as a home health aide and a telemarketer.  AR 25.  At step five, he found that Plaintiff was

able to perform work that existed in sufficient numbers in the national economy, including as a

marker, housekeeping cleaner, or routing clerk.  AR 26.  He thus found Plaintiff not disabled at

step five.  *Id.*

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision.  AR

1.  On July 20, 2021, the Appeals Council denied the request for review.  *Id.*  Plaintiff timely

filed her appeal to this Court on August 30, 2021.  Case No. 1:21-cv-00849-LF, Doc. 1.[7]  The

case was voluntarily remanded on March 30, 2022.  AR 1288.  The Appeals Council remanded

her case on June 23, 2022, and directed the ALJ to further consider Plaintiff's migraine

---

[7] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

symptoms, the medical source opinions of Dr. Richard Laugher and LPCC Alma Gonzales, and

the prior administrative medical findings of Dr. Thomas VanHoose.  AR 1291–93.

On May 25, 2023, Plaintiff attended another hearing, this time before ALJ Michael

Leppala.  AR 1217.  On July 29, 2023, ALJ Leppala issued an unfavorable decision.  AR 1187.

He found, as ALJ Holappa had, that Plaintiff met the insured status requirements of the Social

Security Act through September 30, 2020.  AR 1193.  At step one, ALJ Leppala found that

Plaintiff had not engaged in substantial, gainful activity since July 1, 2018, her alleged onset

date.  *Id*.  At step two, he found that Plaintiff's migraine headaches, cervical

strain/cervicalgia/scoliosis, carpal tunnel syndrome status-post bilateral median nerve

decompressions, anxiety disorder, bipolar disorder, and PTSD were severe impairments.  *Id*.  At

step three, he found that none of Plaintiff's impairments, alone or in combination, met or

medically equaled a Listing.  AR 1194.  Because he found that none of the impairments met a

Listing, he assessed Plaintiff's RFC.  AR 1197.  Specifically, he found Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the
> Claimant is capable of occasionally lifting and/or carrying 20 pounds, frequently
> lifting and/or carrying ten pounds, standing and/or walking for about six hours in
> an eight-hour workday, and sitting for about six hours in an eight-hour workday,
> all with normal breaks. She is further limited to occasionally [sic] climbing of
> ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally
> balancing, stooping, kneeling, crouching, and crawling, and frequently handling,
> fingering, and feeling.  The Claimant is further limited to no more than moderate
> noise and occasional exposure [to] pulmonary irritants, such as fumes, noxious
> odors, dust, gases, and poorly ventilated areas.  She must avoid all exposure to
> unprotected heights, dangerous machinery, or moving machinery.  The Claimant
> can understand, carry out, and remember simple instructions and make
> commensurate work-related decisions, respond appropriately to supervision,
> coworkers, and work situations, deal with occasional changes in work setting,
> maintain concentration, persistence, and pace for up to and including two hours at
> a time with normal breaks throughout a normal workday.  She is limited to
> occasional interaction with supervisors and co-workers and less than occasional
> (but more than none) with the general public.

AR 1197–98.

At step four, he concluded that Plaintiff was not capable of performing her past relevant work as a home health aide and a telemarketer.  AR 1206.  At step five, he found that Plaintiff was able to perform work that existed in sufficient numbers in the national economy, including as a garment sorter or laundry classifier.  AR 1207.  He thus found Plaintiff not disabled at step five.  *Id.*

Following this unfavorable decision, Plaintiff timely filed the present action on August 31, 2023.  Doc. 1.

### IV.    Plaintiff's Claims

Plaintiff raises two main arguments for reversing and remanding this case.  First, she argues that ALJ Leppala failed to follow the U.S. District Court mandate to consider her migraine symptoms and Dr. Thomas VanHoose's administrative findings.  Doc. 18 at 6–7. Second, she argues that the ALJ improperly discounted her subjective allegations of mental health symptoms.  *Id.* at 18.  I address the migraine issue first, and because I conclude that the ALJ committed harmful error, I do not reach the remaining issues.

### V.    Analysis

A.    <u>ALJ Leppala failed to adequately consider the effect of Plaintiff's migraines on her ability to work</u>.

In arguing that the ALJ failed to adequately consider Plaintiff's migraine symptoms, Plaintiff essentially argues that the ALJ's conclusion that "the record does not support the Claimant's alleged limitations for migraine headaches" is not supported by substantial evidence. *See* Doc. 18 at 9–13.  The Commissioner argues to the contrary.  *See* Doc. 24 at 8–24.  A careful review of ALJ Leppala's decision reveals that his conclusion regarding Plaintiff's migraines is not supported by substantial evidence.

ALJ Leppala cited the following facts in support of his conclusion that Plaintiff's migraines did not prevent her from working: 1) that she sought urgent or emergency medical care for her migraines thirteen times between October 2018 and December 2022, *see* AR 1199; 2) that in the case of her emergency room visits, she generally "received medications . . . , experienced improvement, and was discharged in stable condition, *id.*; 3) that she had an "unremarkable" brain MRI in January 2019, AR 1200; 4) that her testimony regarding the frequency of her migraines did not match her medical records, *id.*; 5) that she "associated nausea, vomiting, and photophobia" with the migraines and that they were triggered by "weather changes and physical exertion" as well as her menses, *id.*; 6) that providers noted her migraines were stable in September 2021, *id.*; 7) that providers also noted her migraines would "likely worsen due to neck pain," *id.*; and 8) that in December 2022, Plaintiff's provider recommended that she consider Botox injections for her migraine headaches but that there is no evidence Plaintiff "sought" Botox injections as a treatment subsequently, *id.*[8]

Some of these facts appear unrelated to whether Plaintiff can work.  For example, the fact that the migraines are often associated with weather changes, physical exertion, or menses seems more like background information than evidence of occupational capabilities; weather changes and menses, at a minimum, cannot be accounted for with workplace limitations.  Similarly, the fact that Plaintiff's migraines likely will worsen due to neck pain is, if anything, suggestive of a

---

[8] In addition to critiquing ALJ Leppala's reliance on these facts, Plaintiff argues that ALJ Leppala failed to consider her subjective allegations of symptoms.  Doc. 18 at 8.  The Commissioner fails to respond to this argument.  *See generally* Doc. 24.  Because I find that ALJ Leppala failed to support his findings regarding Plaintiff's migraines and their effect on her ability to work with substantial evidence, I do not reach the issue of Plaintiff's subjective allegations of symptoms.

future diminished capacity to work, but it provides no information about whether she can work now.

Other facts refer to stability, such as that Plaintiff was able to return from the emergency room in stable condition after her visits or that her migraines were stable in September 2021. Stability, as Plaintiff points out, does not necessarily mean wellness; it more likely suggests consistency.  Doc. 18 at 12.  An individual might be stable in a condition but too unwell to work. *See Maez ex rel. Maez v. Berryhill*, No. 1:16-cv-00766-LF, 2017 WL 6397726, at *7 (D.N.M. Dec. 14, 2017); *Beauclair v. Barnhart*, 423 F. Supp. 2d 1259, 1277 (D. Kan. 2006); *see also Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) ("[T]he ALJ consistently interprets reports that Kohler's condition has been 'stable' to mean that Kohler's condition has been good, when the term could mean only that her condition has not changed, and she could be stable at a low functional level.").  The stability of Plaintiff's condition, therefore, does not contradict her claims of disabling limitation.

The number of emergency room or urgent care visits, thirteen in a span of just over four years, requires clarification.  ALJ Leppala does not indicate in his opinion whether or how the number of urgent or emergency care visits influenced his decision; the discussion appears only to be a recitation of Plaintiff's medical history.  AR 1199.  The Commissioner argues that the number of visits creates a "readily apparent inconsistency between Plaintiff's allegations and the objective medical evidence" because Plaintiff claimed to experience six to eight migraines per month or more.  The ALJ, however, never stated that Plaintiff's urgent care and emergency room visits contradicted her claims.  Doc. 24 at 12.  It is not obvious that Plaintiff sought treatment at an urgent care facility or in an emergency room every time she experienced a debilitating migraine.  Indeed, she testified that she addressed her migraines first by taking her medication,

and if that didn't help, she would go to her room, lay down, turn the lights off, and cover her

head to try to relieve the tension, AR 1251, a situation that likely would prevent her from

working, but might not require a visit to an emergency room or urgent care facility.  Plaintiff

only went to the urgent care facility or the emergency room if her home treatment did not work

and she needed a shot.  AR 53.  The Commissioner's *post hoc* support for an ALJ's decision,

when the rationale is not apparent from the decision itself, is impermissible.  *Haga v. Astrue*, 482

F.3d 1205, 1207–08 (10th Cir. 2007).[9]

Rather, ALJ Leppala found contradiction between Plaintiff's testimony and her reported

frequency of migraines as relayed to her providers.  AR 1200.  Specifically, he stated,

> Despite testifying at the hearing she experienced migraine headaches six to eight
> times a month or more, to her providers, the Claimant reported a sudden return of
> severe migraines in April 2019 indicating she experienced headaches three times
> per week in May 2019, two to three times per week in July 2019, one to two times
> per week in January 2020, and two times per month in October 2021.

*Id.*  I first note that as for July 2019 and January 2020, there is no contradiction at all between

Plaintiff's testimony and her reports to physicians; headaches twice per week amount to eight per

month, the same amount that Plaintiff claimed at the hearing.  As for April 2019 and October

2021, these numbers do not precisely match Plaintiff's testimony, but she argues that they are

generally "in line" with her testimony.  Doc. 18 at 11.  This stance aligns with SSR 16-3p, which

states, "Symptoms may vary in their intensity, persistence, and functional effects, or may worsen

---

[9] Similarly, the Commissioner discusses Plaintiff's home medication regimen, activities of daily
living, and range of motion and gait findings as evidence that Plaintiff's claims of disabling
migraines were unsupported.  Doc. 24 at 9–11.  Although ALJ Leppala discussed Plaintiff's
activities of daily living in the context of her ability to use her hands, AR 1199, and range of
motion and gait findings following the discussion of her migraine symptoms, *see* AR 1200, he
did not link these discussions logically to Plaintiff's migraines.  I therefore find that these, too,
are impermissible *post hoc* rationales by the Commissioner when the connection between these
facts and Plaintiff's migraines is not apparent from the ALJ's opinion.

or improve with time.  This may explain why an individual's statements vary when describing

the intensity, persistence, or functional effects of symptoms."  2017 WL 5180304, at *9 (Oct. 25,

2017).  The fact that at one visit, Plaintiff had more frequent migraines, and at another, she had

less frequent migraines, fits well within the framework of SSR 16-3p.  ALJ Leppala's assessment

fails to take this regulation into account.

The "unremarkable" brain MRI also is not evidence of whether Plaintiff's migraines are

disabling.  The Tenth Circuit has held, "We are aware of no medical procedures to objectively

evaluate either the severity of a migraine or pain; and where no such conclusive tests exist, the

failure to produce such test results is surely an improper basis for discrediting a claimant's

uncontroverted testimony."  *Pennington v. Chater*, 113 F.3d 1246, 1997 WL 297684, at *3 (10th

Cir. 1997) (unpublished table decision).  While a claimant's subjective testimony alone is

insufficient to establish disability, *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993),

"objective-like" measures of assessing migraine severity include treating physician observations,

emergency room visits, and chart notes regarding medications the claimant has tried, *Baca v.

Colvin*, No. 13-CV-224, 2015 WL 13666982, at *6 (D.N.M. Jan. 8, 2015) (Armijo, J.) (quoting

*Franklin v. Astrue*, No. 10–cv–02532, 2012 WL 1059995, at *4 (D. Colo. Mar. 28, 2012)).  Put

plainly, case law indicates that an "unremarkable" brain MRI does not preclude, or even weigh

against, a finding of disabling migraines.  Moreover, the record in this case is replete with

evidence of other "objective-like" measures which indicate the severity of Plaintiff's migraines.

Finally, the fact that Plaintiff did not pursue Botox injections is, while an accurate

statement and appropriate consideration, not dispositive.  It is true that an ALJ may consider the

methods a claimant employs to treat his or her symptoms.  *See Qualls v. Apfel*, 206 F.3d 1368,

1372–73 (10th Cir. 2000).  However, no provider prescribed Plaintiff Botox injections; rather,

the provider only "[e]ncouraged [Plaintiff] to think about Botox and or ear piercing for migraine headaches." AR 3300. Furthermore, Plaintiff has undergone injections of Decadron, Imitrex, Promethazine, Toradol, Dilaudid, and Norflex while at the hospital seeking migraine relief, and has taken medication at home including topiramate. *See* Doc. 18 at 10 (citing AR 370–71, 384–85, 445); *see also* AR 53 ("When [the migraines] get so bad that the medication doesn't help, the only thing I can do is go to the hospital and they'll give me a shot."), AR 55 (Plaintiff has tried "sumatriptan" and "rizatriptan" as well as her current migraine medication, butalbital). ALJ Leppala fails to discuss the numerous other medical interventions Plaintiff has undergone and instead mentions only a single foregone option—an option not even prescribed, but merely encouraged. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). If ALJ Leppala is relying on Plaintiff's decision not to pursue Botox for her migraines, it is improper for him not to consider the full context of her treatment efforts, including the many medications she has tried.

In sum, ALJ Leppala's conclusion that Plaintiff's migraines were not disabling is unsupported by substantial evidence. Rather, he cites to non-dispositive background information, assertions of "stability," purported contradictions that do not hold up when considered against applicable regulations, objective evidence unnecessary to a migraine diagnosis, and a cherry-picked choice not to pursue one method of treatment when the record indicates Plaintiff pursued many others. I therefore recommend that the Court remand this case so that the ALJ can consider Plaintiff's migraines and draw a conclusion based on substantial evidence.

    B. <u>Because ALJ Leppala's consideration of Plaintiff's migraines was inadequate, the Court need not reach the other issues.</u>

Because I find that the ALJ failed to support his conclusions regarding Plaintiff's migraines with substantial evidence, I will not address the other issues raised by Plaintiff because they may be affected by the Commissioner's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## VI. Conclusion

I find that ALJ Leppala erred by failing to support his conclusions about Plaintiff's migraines with substantial evidence. I therefore recommend that the Court remand so that the ALJ can consider Plaintiff's migraines with the support of substantial evidence. I do not reach Plaintiff's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id*. In other words, if no objections are filed, no appellate review will be allowed.**

_Laura Fashing_
Laura Fashing
United States Magistrate Judge